Good morning, Your Honors. David Giurbino on behalf of Clarence Williams. Your Honors, thanks for keeping this one on for oral argument. This was actually, I think, a very close case. The jury at one point sent a note to the judge saying, hey, could you appoint an expert? We don't know who to believe, which expert to believe about how this fire started. And I think that evinces how weak the government's evidence actually was. Clarence Williams did himself no favors during the prosecution of this case. His conduct during trial and his, you know, letters to one of the witnesses, they all, it was bad. But the evidence in favor of showing that this was not an accidental fire was actually quite weak. You had the government's experts saying, oh, there were three places this fire had to start. You had the defense experts saying, well, if that's true, you should have burning in the baseboards. There should be all these other collateral facts that would exist. And the jury obviously had trouble with it. And I say this just to set the stage for the two errors that Mr. Williams brings to this court, which are, of course, the Miranda violation and the denial of the preemptory. And there's actually a little logical coherence between the two issues because both were down to whether Mr. Williams consented to each procedure. With respect to the Miranda violation, I don't think there's much question about whether there was a Miranda violation or not. If you get threatened with arrest and transported to a scene, I think your consent is not voluntary at that point. So the question becomes- I take it what you're saying, he's under arrest as soon as he got into that car, no matter what happens at the scene where the actual statements were made, makes no difference? Well, the judge says – I'm sorry, not the judge. The officer says, come to the scene with me. Mr. Williams says no. I understand that. I've read the record. Right. But that's not my question. It seemed to me your argument was that if he's under – if he's in custody in the car, he's also in custody at the scene no matter what happens. Right. I think once custody is obtained, I don't think it diminishes the fact that he is, you know, let out of the car to stand at the scene. But the statements that you're concerned about happened at the scene. Correct. And there was some evidence that he was free to walk around and do whatever. Right, right, yeah. I mean, I can't – under 2254, I can't dispute those factual findings, but I don't think they're important because I think that the initial overboring of his will make any subsequent diminishment in the custody irrelevant. In other words, once you're told you're coming with me, you refuse. If you refuse, you're going to be arrested. You can't then say, well, I'm going to let you out of the car now so you're no longer in custody. It wasn't really free. So under your theory, even if he felt he could walk home or walk wherever, leave, go down to the bar, and he actually did do that, he's still in custody. But nobody would feel reasonably free to leave in that situation where you're transported to the scene of a crime under a threat of arrest. No one would reasonably think, well, hey, I can just go to the store to get some milk. That's not true because if you leave, you're going to be forcibly retrieved and taken to the scene. So I don't think an argument could be made that because he was allowed to stand outside of the vehicle during the progress of the investigation at the scene, I don't think you can say that somehow his custody had occurred or then had evaporated or no longer obtained. Given your idea of the facts, what was the specific command to him at the scene? Well, my command, of course, occurs earlier. That's when the police officer— I understand, but getting to the scene, what, given the record that we have in front of us, were the specific instructions to your client? I don't think—in fact, I don't base my argument on that there were specific instructions to him at the scene. My argument is based on the fact that when he was at his girlfriend's apartment and told that he had to come to the fire scene or face arrest, that his being accompanied by the officer and then being subsequently questioned at the scene, that was clearly custody that had obtained by an express threat of arrest. And at the scene, he was questioned. And we're talking about a five or—I don't know exactly how far it was, but it appears from the record it was quite close in time. Like the officer saw the fire, drove over, picked him up—picked him up when he expressed threat of arrest and drove him to the scene. He was allowed out of the vehicle. It's not clear exactly what sort of restrictions were placed on him. I think it would be clear to anyone in the circumstance that he was not allowed. You can't just leave at that point. Now, at this stage, what we're discussing is whether the Supreme Court law sustains your position. U.S. Supreme Court law. Yes, absolutely. Now, how would you distinguish this case from Yarborough? Well, I think the Beardland case that came out subsequently— Well, let's talk about Yarborough. In Yarborough, the defendant was taken to the police department. That's right. And the Supreme Court held that he could leave. He could leave. He wasn't threatened with arrest, though. And he was a juvenile. He was accompanied by his parents. I mean, I— When you're in the police department, that's—when they take you— when you're in the police department, you're pretty well foreclosed from thinking that you're— Well, I understand your— And if he could leave there and not be under arrest, why couldn't he leave after being in a police car? Well, I think the initial part of Your Honor's question frames the discussion, which is being taken to the police station. If I walk down to the police station today and I start answering questions about some crime, which I absolutely have not committed, and the police just question me, that's not custody. When a juvenile goes down to the police station and starts to answer questions, and he's got his parents there, he's never told he can't leave, he's never told you're going to be arrested if you try to leave, a state court could say, well, under these circumstances, it's not absolutely clear that you were in custody. But that's just not true. What's your best U.S. Supreme Court case to sustain your position? Beardley. It came out at 20H8 on June 20th, which is the traffic stop case where the passenger— where they stopped the car and the Supreme Court decided that passengers are not free to leave, even though they're just investigating the driver. And the point is a reasonable person in that circumstance would not feel free to leave. I used most of my time. I'd like to address briefly the preemptory case. I reread the excerpt of the record I think 17 times trying to figure out exactly what happened. But I think what is clear is this. The trial court, this was a case that was going to trial in December, and everybody knew it was going to be a long trial, and in fact it was, 3,000 pages of transcript. Let me interrupt you. Let me shortcut this just a little bit. The thing that worries me about that particular argument that you're making is that it seems to me that the California law would suggest he should have three preemptories because there were three people set. And he got three preemptories, and he didn't use one. And one of the jurors, which he had a chance to recuse or a chance to eliminate, was sitting on the jury, and he did not eliminate that juror. If I pry the California law as it is, you get the number of preemptories that you need in order for the ones that are set that are alternatives. They complied with the law. If I use his approach, he had three preemptories to use. He used two so that the one he's trying to challenge, he could have eliminated had he wanted to. I just don't see where we're getting with this argument. Well, that goes to the question of whether there is error rather than the remedy for the error. And my point would be this. Then why was there any discussion of waiver? If there's no error, if there's nothing to be waived, why does the trial court go to great pains to get his attorney to waive some sort of procedural protection? If it is true that there was just you got what the state law gives you, then there's no waiver discussion to be had. Well, I guess my worry is that given my standard, which is contrary to or involved in an unreasonable application of clearly established federal law as established by the Supreme Court, given what the Supreme Court has said in these kind of situations, as long as the process agreed with the California law, it doesn't seem to me that I've got any Supreme Court precedent that would say I would change. Well, I understand Your Honor's position, and that's the question of whether error exists rather than the remedy for that error. And my only point would be that there was a reason the trial court took a waiver. They did deny him the right to challenge the fourth, just alternate to be seated. I've got about 40 seconds left, so I'd like to reserve that for any brief rebuttal that may be needed. All right. Thank you. Good morning. I please the Court. Douglas Danzig, Deputy Attorney General, on behalf of Pauline, respondent of Pauline. Just briefly, I'd like to comment on the latter comments of counsel. The question as to why did the trial court discuss waiver, it appears perfectly clear that the court was simply concerned with loss of a court day. And given the way that the panel had been consumed by the voir dire process, it was apparent that the possibility of seating four alternates, if the parties didn't stipulate to what was admittedly an unorthodox approach, would have required the calling up of another 40-person panel in order to try to seat a one-fourth alternate. So the court gave both parties an opportunity to comment, object, or agree. They agreed, and that was why it was done. Do I understand correctly that under the state procedure, parties are entitled to one peremptory challenge for each alternate? For each alternate seated. So there's three alternates, and each side had three challenges. Yes, Your Honor. Is that correct? They ended up with three, but as defense counsel pointed out in the discussions regarding this proposed procedure, had neither party exercised their last peremptory that the judge had told them they could exercise, there might have been four. But it's speculation as to how that would have come out. There were three seated, and three were offered and only two were exercised, including an opportunity to dismiss, as the court has already recognized, an opportunity that was not taken to dismiss the juror that's now in question, one of the alternates that eventually heard the case. As to the Miranda issue, I'm not sure that there's much to say about that. Ultimately, it boils down to whether he was in custody or not at the scene. The trial judge made a finding that he was definitely detained when he was taken from the apartment to the scene. The question then becomes was he either under formal arrest or were the circumstances consistent with a formal arrest or that a reasonable person would consider a formal arrest once he was at the scene. So, Counselor, would you agree with me that nobody said at the scene, wait at this spot and don't move? I think the police officer actually said, would you wait around, one of the arson investigators wants to talk to you. So that was the best that was said? I think that was the most coercive comment that was said. And if, in fact, the questions asked, do you think that the questions asked were appropriate given the standards that might be about questions to be asked? I mean, they ask his name. They ask if he was the owner of the property. They ask if he did have insurance on the property. And then they ask when he was last on the property. Don't you believe that those questions, if he were in custody, would be inappropriate? Would be appropriate or inappropriate? Inappropriate. No, I believe the trial court was perfectly correct when it ruled that these were preliminary investigative questions. How would we say when he was last on the property would be preliminarily investigative? My recollection of the record, and I apologize that I don't remember exactly when that question was asked, but I don't believe that that was part of the three questions that are at issue here. The three questions that were asked by the arson investigator were simply his name, whether he owned the property, and whether he had an insurance policy on the property. I don't recall that that was part of that conversation when he was asked when he was last on the property. I don't know whether that came before or after a Miranda waiver. There is another factor that comes in here, and that is the defendant testified. These comments were coming in anyway. Well, the insurance was coming in, would come in clearly. Did he own the property? That would come in. But certainly if the 4 p.m. question is there, that wouldn't come in later on, and that's the problem. You're not aware of whether or not that took place when Schaefer was asking him. My recollection is the same as Judge Smith's that it was. Why don't you assume for just the sake of our argument, and you can verify that and go through the record. Let's assume for the sake of this argument that Schaefer did ask him, when's the last time you were at this property, and he said 4 p.m. If he was in custody at that time, wouldn't that be suppressible? I guess the question ultimately boils down to whether that's likely to occur. Excuse me, suppressible because he's not had any Miranda warnings. That turns on the question of whether that was a question designed to elicit any culpability. Clearly that he came back at 4 p.m. that if he was there at 4 p.m. was inconsistent with his testimony and used for cross-examination. Correct. That's how it would have actually obviously played out had he taken this. Okay. So the real question is whether or not he was in custody at that time. Now, as I understand what we have before us in the blue brief, it says that so while it is true this court should accept state courts' factual findings, assuming there has been a concession of accepting the state courts' factual findings, how would you argue that he was not in custody at that time? Given the circumstances surrounding when he was there, he was free to move around, he was free to leave, he was asked to wait, he was not ordered to wait, and he was told that the arson investigator wanted to talk to him. And none of those circumstances are remotely consistent with circumstances that a reasonable person would feel that that is a formal arrest. I would never be so silly as to dispute the fact that he had been told he would be arrested if he didn't come to the scene, that that wasn't somewhat coercive and it was found to be a detention. But once at the scene, the circumstances simply changed. If he wanted, a reasonable person might have said at that time, I don't want to do this anymore, I want to leave. Now, how it might have played out at that point is speculation. But circumstances as they were found by the tribal court were consistent with, not consistent with custody, not consistent with a formal arrest whatsoever. So your view is, assuming the concession, the factual finding that he's allowed to walk around at the scene and those kinds of things indicate that under the Supreme Court determination, that is not completely inconsistent with Supreme Court findings that he was, with Supreme Court law that he was not in, that would be your argument? Yes, under the ADPA standard. Then how do you address the argument that counsel made that he was already, because of how he was picked up and how he was directed by the police officer, that he was already in custody before he got to the scene? I believe it was a detention. I don't believe it was custody. I believe it was a detention. There was a threat of an arrest. He said if he wasn't brought to the scene, he would be arrested and taken to the scene. But nevertheless, he did, it was a detention at that point. There was nothing about it that constituted uninterrupted custody once he arrived at the scene. So the circumstances simply shifted. And it can't be ignored that he indicated he would come to the scene. I mean, he was voluntarily coming to the scene anyway. Whether the officer was concerned that he might have sconed or not is simply not in the record. But it's not, it's certainly not an objectively unreasonable interpretation of the facts, what the trial court found. Well, I guess, counsel, the problem that I'm wrestling is when we have the standard, would one have felt one was not at liberty to terminate where they were and leave when one is told, you either come down and go with me to the scene or I'm going to arrest you. Get in my car and I'm taking you. And then when you get to the place, you'll be here so that somebody can talk to you, whether that isn't enough that we've established custody. But the last element of the hypothetical is not what happened. The officer did not say, you stay here so someone can talk to you. According to the record and according to the trial court's factual findings, the officer said, you know, will you hang around because somebody wants to talk to you. And I do, just as a final comment, I do want to reemphasize that he took the stand that this evidence clearly would have been admissible as impeachment or as direct evidence, or pardon me, as impeachment evidence on cross-examination under Harris v. New York, and there's simply a non-prejudice aspect to this also. There was strong evidence. The consul points out or argues that this was a close case. It was not a close case. The evidence was overwhelming that this was arson, and he was seen on the scene by independent witnesses shortly before the arson fire was reported. And the question of whether he said he was on the scene at 4 o'clock or not, assuming that that's the critical question, was not going to tilt this one way or another. Thank you. Your time has elapsed. Thank you. Two brief comments. Number one, maybe it wasn't close for counsel, but it was close for the jury. That's why they asked for the expert to be appointed. Second comment is, it's not just that he was threatened with arrest. He refused to go with the officer. The officer said, come with me. William says, no. You're coming with me or you're getting arrested. I mean, that's custody. Thanks, Your Honors. Thank you. William versus Garibino case number 0655328 is here submitted. We will now take up NRA Beachport Entertainment.
judges: Wallace, Nelson, Smith